625 A.2d 1215

**COMMONWEALTH of Pennsylvania**

v.

**Michael J. CAMPBELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 6, 1993.

Filed June 3, 1993.

Jerry A. Philpott, Duncannon; for appellant.

Daniel W. Stern, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before WIEAND, OLSZEWSKI and HESTER, JJ.

WIEAND, Judge:

After being tried without jury, Michael Campbell was found guilty of making a terroristic threat in violation of 18 Pa.C.S. § 2706. He was subsequently sentenced to serve a term of imprisonment for not less than eleven and one-half (11½) months nor more than three (3) years. On direct appeal from the judgment of sentence, Campbell argues that the charges against him should be dismissed because: (1) the evidence was insufficient to sustain a finding of guilt; and (2) a delay of more than five (5) months in returning a verdict, while appellant remained incarcerated, violated Pa.R.Crim.P. 1122, caused unnecessary prejudice, and now requires an arrest of judgment.

Campbell was charged with making a terroristic threat after an incident on May 21, 1991, at the Best Mart convenience store in Newport, Perry County. Appellant waived his right to counsel and conducted his own defense, with the assistance of court appointed stand-by counsel. At the conclusion of the non-jury trial on October 17, 1991, the court deferred its decision pending the preparation of a transcript of the proceedings. A transcript was prepared and filed on November 8, 1991. When a verdict was not forthcoming thereafter, appellant filed, on February 26, 1992, a petition for a writ of habeas corpus. On March 17, 1992, the trial court issued an order stating that it would not immediately adjudicate Campbell's guilt and suggesting that "either the District Attorney, the Chief Probation Officer, or defendant himself consider proceedings under the Mental Health Procedures Act and the Court will in due course adjudicate on the issue of guilt or innocence with or without a report of the aforesaid proceedings." Appellant then filed a pro se pleading captioned "Motion For Entry Of Not Guilty Verdict." In response, the trial court entered an order, on March 24, 1992, adjudicating appellant guilty of the terroristic threat charge. After verdict, appellant submitted to the trial court a pro se "Motion To Appeal Guilty Verdict," which was made a part of the record on April 8, 1992. Counsel was appointed and given a period of ten (10) days to supplement appellant's pro se post-trial

motions. However, no supplemental post-trial motions were filed and, on July 31, 1992, the trial court issued an order denying post-trial relief. A pre-sentence report was prepared, and appellant was sentenced on August 13, 1992. This appeal followed.

We reject the Commonwealth's contention that the issues raised on appeal have been waived by the failure to file timely post-trial motions. "It is well settled that only issues raised in post-trial motions are preserved for appellate review." *Commonwealth v. Copeland,* 381 Pa.Super. 382, 385, 554 A.2d 54, 55 (1988). See: *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979). However, review of the record in this case discloses that appellant did, in fact, file pro se a post-trial motion captioned "Motion To Appeal Guilty Verdict." Although this motion was not filed within the time period set by Pa.R.Crim.P. 1123(a),[1] the trial court considered the merits of the issues raised by appellant when it dismissed appellant's motion. Under similar circumstances, the Superior Court has held that "issues in untimely filed post-verdict motions that were not treated as waived by the trial court will not be considered waived for purposes of appeal." *Commonwealth v. Pirela,* 398 Pa.Super. 76, 81, 580 A.2d 848, 851 (1990). See: *Kurtas v. Kurtas,* 521 Pa. 105, 555 A.2d 804 (1989) (plurality opinion). See also: *Commonwealth v. Ramin,* 390 Pa.Super. 591, 593, 568 A.2d 1329, 1331 (1990); *Commonwealth v. Markovitch,* 388 Pa.Super. 244, 247–248, 565 A.2d 468, 470 (1989). Because the issues of the sufficiency of the evidence and the alleged violation of Pa.R.Crim.P. 1122 were not deemed waived by the trial court and were, in fact, considered by the

1. Pa.R.Crim.P. 1123(a) provides as follows:
   (a) Within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument, a hearing, or both shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions that are stated specifically and with particularity may be argued or heard. If the grounds asserted do not require a transcript, neither the filing, argument, nor hearing of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony.

trial court in denying post-trial relief, this Court can provide appellate review.[2]

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, which has won the verdict. We then determine whether the evidence was sufficient to permit the finder of fact to determine that each and every element of the crime charged was established beyond a reasonable doubt. See: *Commonwealth v. Smith,* 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). It is the function of the fact-finder to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The fact-finder is free to believe all, part or none of the evidence introduced at trial. See: *Commonwealth v. Guest,* 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). The facts and circumstances established at trial "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [trier of fact] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.' " *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

The evidence was that on the evening of May 20, 1991, appellant was standing in the cashier's line at the convenience store, waiting to pay for gasoline. In front of him were two young women who were purchasing cigarettes. When the cashier, who was Tracy Kratzer, asked if they were old enough to buy cigarettes, they laughed and said they were twenty-one years of age. Embarrassed for having asked the question, Kratzer raised her hand to her head and pointed to it with her index finger, intending to signify the foolishness of

2. These issues were also raised by appellant, prior to the trial court's rendering of a verdict, in his petition for writ of habeas corpus and his "Motion For Entry Of Not Guilty Verdict."

her mistake. Although appellant appeared to be amused by the transaction, appellant privately determined that Kratzer's gesture had been directed toward him and was intended to suggest that he was crazy and should shoot himself. He said nothing about it when he paid for his gasoline and left the store.

On the following day, May 21, 1991, at or about 1:45 p.m., appellant returned to the Best Mart store and approached Pamela Book, the cashier who was then on duty and told her that the cashier who had worked the previous day had gestured to him in a manner which he did not appreciate. He demonstrated the gesture and directed Book to give a message to the cashier with the bleached blonde hair that "when I decide to do this, it will be on her shift and there will be lots go down." Book felt threatened by appellant's conduct, having interpreted the gesture he made to represent a gun and, thus, fearing that appellant would return when Kratzer was working and would cause bodily harm to other persons in the store. She described appellant's manner as direct and matter of fact, as though he knew exactly what he wanted to say. She said further that appellant's demeanor suggested that he meant to carry out his threat. After appellant had left the store, Book was able to observe the license number of appellant's vehicle. She contacted the state police, and a trooper was dispatched to the Best Mart store to investigate the incident. When interviewed by the trooper, according to the evidence, Pamela Book was still visibly shaken. When Tracy Kratzer was later summoned to the store and told of appellant's remarks, she too appeared to be frightened.

Appellant was charged with making a terroristic threat in an information which averred that he "did threaten to commit a crime of violence with the intent to terrorize another in reckless disregard of the risk of causing such terror ... in that [appellant] did have a message of terror delivered to Tracy Kratzer indicating [that] she and other people would be harmed by [appellant]...." Appellant denied guilt. He contended that his remarks had been intentionally ambiguous so that they could not be construed as a threat to commit a

crime. He testified on his own behalf at trial and said that Kratzer's gesture had made him very angry. After he left the store, he decided that he couldn't let the cashier get away with such conduct and had to get even. He decided that he would go back to the store "to say something, some kind of double-talk that could be taken two ways, just to screw with [Kratzer's] mind because she screwed with my mind." According to appellant, he waited until the following day to "give me 24 hours to cool off and think of something clever and indirect that could not possibly be pinned to one person, because I didn't say what I was going to do, I didn't say anything about a gun, nothing like that."

The crime of making a terroristic threat is defined by statute as follows:

### § 2706. Terroristic threats

A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706. "The purpose of [Section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S. § 2706, Official Comment—1972. See: *Commonwealth v. Anneski*, 362 Pa.Super. 580, 585, 525 A.2d 373, 376 (1987); *Commonwealth v. Kidd*, 296 Pa.Super. 393, 397, 442 A.2d 826, 827 (1982). " 'The offense does not require that the accused intend to carry out the threat; it does require an intent to terrorize. The harm sought to be prevented is the psychological distress which follows from an invasion of another's sense of personal security.' " *Commonwealth v. Speller*, 311 Pa.Super. 569, 573, 458 A.2d 198, 200 (1983), quoting *Commonwealth v. Hardwick*, 299 Pa.Super. 362, 365–366, 445 A.2d 796, 797 (1982). Therefore, "[i]t is the making of the threat with intent to terrorize that constitutes the crime." *Commonwealth v.*

*Anneski, supra* at 587, 525 A.2d at 376. See also: *Commonwealth v. White,* 232 Pa.Super. 176, 183–184, 335 A.2d 436, 439 (1975).

■ To obtain a conviction for making a terroristic threat, the Commonwealth must prove that: (1) the defendant made a threat to commit a crime of violence; and (2) such threat was communicated with the intent of terrorizing or with reckless disregard for the risk of causing terror. See: *Commonwealth v. Lumpkins,* 324 Pa.Super. 8, 12, 471 A.2d 96, 98 (1984); *Commonwealth v. Ferrer,* 283 Pa.Super. 21, 23, 423 A.2d 423, 424 (1980). It has been observed that " 'even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce.' " *Commonwealth v. Ashford,* 268 Pa.Super. 225, 229, 407 A.2d 1328, 1329 (1979), quoting Model Penal Code, § 211.3, Tent.Draft No. 11 at p. 9 (1960). See also: *Commonwealth v. Chance,* 312 Pa.Super. 435, 443, 458 A.2d 1371, 1375 (1983). Moreover, "it is unnecessary for [the defendant] to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Commonwealth v. Hudgens,* 400 Pa.Super. 79, 90, 582 A.2d 1352, 1358 (1990).

■ Instantly, appellant's remarks, although somewhat ambiguous, were combined with a hand gesture symbolic of a gun pointed at his head. His remarks were made in response to a perceived insult which appellant mistakenly believed that Tracy Kratzer had directed to him on the previous day. Viewed in this context, appellant's message to Kratzer that "when I do this, it will be on her shift and there will be lots go down," could reasonably be interpreted as a threat by appellant that he would commit suicide and harm Kratzer, as well as other persons in the store as he carried out what he mistakenly believed Kratzer to have suggested. Given appellant's complete misinterpretation of Kratzer's actions on the previous day, it is unlikely that Kratzer would have understood the full meaning of the message which appellant gave to Pamela Book.

Nevertheless, the evidence was that both she and Book were frightened. The terroristic threats section of the Crimes Code is directed at conduct intended to terrorize another person or which recklessly disregards the risk of terrorizing another person. Thus, it was appellant's intent which was controlling and not whether his threats were fully understood by their intended victim.

Appellant's desire to terrorize Kratzer is demonstrated by his own testimony at trial. He said that he had been very angry as a result of Kratzer's making a hand gesture, which he believed to be a suggestion that he kill himself. Consequently, he wanted to get even with Kratzer by saying something which would "screw with her mind." From this testimony appellant's intent to cause fear and alarm in Kratzer seems patently clear. Given the context in which the incident occurred, his comments and actions could reasonably be interpreted as a threat to physically harm Kratzer. This is the manner in which appellant's conduct was interpreted by Pamela Book, whom he had told to give the message to Kratzer. Under all of these circumstances, therefore, we are satisfied that there was sufficient evidence to support the trial court's finding that appellant was guilty of making a terroristic threat.

We reject also appellant's contention that his remarks were a mere spur of the moment expression of anger and, therefore, not subject to being penalized under the terroristic threats statute. By his own testimony, appellant revealed otherwise. Appellant said that he had waited until the following day to respond to the perceived insult by Kratzer so that he would have sufficient time to cool off and think of something clever to say. This testimony discloses premeditated, intentional conduct on appellant's part, rather than a contemporaneous expression of anger. Such conduct is within the statutory proscription against the making of terroristic threats. See: 18 Pa.C.S. § 2706.

Pa.R.Crim.P. 1122 provides as follows:

### Rule 1122. Time for Court Action Following Trial

All motions for a new trial, motions for judgment of acquittal after the jury has been discharged without agreeing upon a verdict, and motions in arrest of judgment shall be decided within thirty days after argument except under unusual circumstances.

A verdict shall be rendered in all non-jury cases within seven (7) days after trial.

Appellant contends that the trial court's failure to render a verdict within seven days of his non-jury trial, as was required by Rule 1122, requires that he be discharged. The Commonwealth concedes that a technical violation of Rule 1122 occurred but suggests that the delay was necessitated by the trial court's request for a transcript and by the court's sua sponte investigation into proceedings under the Mental Health Procedures Act as an alternative to an adjudication of guilt. Finally, the Commonwealth asserts that because appellant was given credit for the time he served prior to the rendering of the verdict, he was not prejudiced by the delay.

Our research has disclosed no appellate court decisions which have determined when, and under what circumstances, a trial court's failure to issue a verdict within seven days after a non-jury trial will require a discharge of a defendant.[3] However, in *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983), the Supreme Court addressed an alleged violation of Rule 1122 where a trial court had failed to rule on post-trial motions within thirty days after oral argument, as required by the rule. The Court reasoned as follows:

Finally, appellant contends that the delay between the time that oral argument was held on his post-verdict motions and the time that his post-verdict motions were denied

---

3. In *Commonwealth v. Young*, 385 Pa.Super. 136, 560 A.2d 204 (1989), the Superior Court determined that the Sixth Amendment right to a speedy trial applied to delays in rendering a verdict. The Court held that a delay of 3½ years between the defendant's non-jury trial and the return of a guilty verdict violated the defendant's constitutional right to a speedy trial and required that he be discharged. In so holding, the *Young* Court noted that a delay of over forty months also constituted a gross violation of Pa.R.Crim.P. 1122. The Court's holding, however, was based on constitutional grounds.

violated Pa.R.Crim.P. 1122, and thus he should be discharged.

> Pa.R.Crim.P. 1122 states in pertinent part: "All motions for a new trial and motions in arrest of judgment shall be decided within thirty days after argument except under unusual circumstances." The record in the present case indicates that the only oral argument of appellant's post-verdict motions occurred on March 25, 1981, and that the trial court denied these motions 35 days later, on April 29, 1981. Since appellant is unable to demonstrate any substantial prejudice from this delay, and the trial court's denial of post-verdict motions took only 5 days longer than required by Pa.R.Crim.P. 1122, appellant's contention is without merit.

*Id.* at 530, 458 A.2d at 938.

Applying the same reasoning to the rule's direction regarding the time for a verdict after completion of a non-jury trial, we hold that a technical violation of the rule will not, standing alone, require that a defendant be discharged. Before a trial court delay will entitle a defendant to a discharge, it must appear that the defendant has been prejudiced by the delay. As the delay increases, however, the need to show a specific prejudice will decrease accordingly.

In requiring a trial court to render a verdict within seven days of trial, the primary purpose of Rule 1122 was to ensure a prompt verdict in all non-jury trials. In the instant case, that purpose was not served. Although the trial court initially deferred a ruling pending preparation of a transcript of the trial proceedings, the record discloses that the transcript was prepared and filed as a part of the record on November 8, 1991. Nonetheless, the trial court did not return a verdict until March 24, 1992. The trial in the instant case had been short and the testimony straightforward. The record reveals no legitimate excuse for the trial court's lengthy delay in returning a verdict. As for the Commonwealth's contention that the trial court delayed issuing a verdict to investigate possible mental health proceedings as an alternative to a guilty verdict, this concern was expressed by the

court for the first time on March 17, 1992, one week before it finally entered its verdict. Meanwhile, appellant remained incarcerated. On the record before this Court, there is no justification for the trial court's failure to return a verdict promptly.

After careful review and consideration, we hold that appellant was substantially prejudiced by the trial court's delay in rendering a verdict. Appellant remained incarcerated for more than five months before the trial court finally adjudicated him guilty of making a terroristic threat. During this time, appellant, even though not convicted of any crime, was powerless to move the case along. He could not file post-trial motions or even request a date for sentencing, for he had not been found guilty. He was, in fact, in limbo, a prisoner subject to the whim of the trial judge, who, unless the rule were enforced, could hold him indefinitely by delaying a verdict. The fact that appellant was ultimately given credit for time served prior to the verdict, does not, in our view, alleviate the prejudice inherent in the court's lengthy delay in returning a verdict. By the time he was sentenced, he had already served almost the entire minimum sentence which the court imposed.[4] To permit such a long delay between trial and verdict in a non-jury case, without any valid excuse therefor, would be to permit trial courts to require defendants to serve their sentences, with no means of obtaining appellate review, by simply refusing to return a verdict. The delay, moreover, subjected the defendant to an anxiety which the rule was intended to eliminate or, at least, reduce. The delay was particularly egregious here, where there was a substantial issue of whether appellant's conduct had constituted a violation of the statute.

We do not hold that any and all violations of Pa.R.Crim.P. 1122 will require that a defendant be discharged. It is highly unlikely that a delay of only a few days between trial and verdict would result in substantial prejudice to a defendant. Even a delay of several months may not be prejudicial where

---

4. The Commonwealth represents to this Court in its appellate brief that appellant has been granted parole.

a defendant is free on bail while the trial court considers its verdict. There may also be situations in which a delay in the rendering of a verdict will be justified by unusual circumstances. This, however, is not such a case. In this case, there was no legitimate reason for a delay of more than five months before a verdict was entered. Because Pa.R.Crim.P. 1122 was violated and because appellant was prejudiced thereby, we hold that judgment must be arrested and appellant discharged.

The judgment of sentence is reversed, and appellant is discharged.