J. S36024/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                             :            PENNSYLVANIA
                             :
              v.                     :
                             :
BARRY LEE KAUFFMAN, JR.        :
                             :
           Appellant        :      No. 1632 MDA 2015

Appeal from the Judgment of Sentence August 31, 2015
In the Court of Common Pleas of York County
Criminal Division No(s): CP-67-CR-0005881-2014

BEFORE: MUNDY, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:                 **FILED JULY 22, 2016**

Appellant, Barry Lee Kauffman, Jr., appeals from the judgment of

sentence entered in the Court of Common Pleas of York County after a jury

convicted Appellant of Terroristic Threats and the trial court found Appellant

guilty of the summary offense of Public Drunkenness.[1]  After careful review,

we affirm the conviction for Terroristic Threats but vacate the conviction for

Public Drunkenness because the Commonwealth failed to present sufficient

evidence that Appellant was in a **public** place while intoxicated.

**FACTUAL AND PROCEDURAL HISTORY**

The factual and procedural history is as follows.  On July 26, 2014,

Michael Boyd and his wife Holly Boyd returned to their home from a day trip

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1), 18 Pa.C.S. § 5505, respectively.

with Mr. Boyd's son Mikey around 10:00 PM. (N.T., Trial, 7/20/15, at 48, 66). As they exited the car, Appellant, who was their next-door neighbor, stood on his porch and yelled obscenities at the family. *Id.* at 48-49, 66-67. During testimony, Mr. and Mrs. Boyd both recalled that Appellant blamed them for testifying against him a month or two earlier in an eviction proceeding. *Id.* at 48-49, 67. Appellant proceeded to walk off his porch and approached Mr. Boyd face-to-face on the property line between the two neighboring yards. *Id.* at 59-60, 68. Ms. Boyd testified that Appellant also came "into our driveway." *Id.* at 68, 70. Mr. Boyd testified that Appellant yelled "he was going to burn our fucking house down with our child in it." *Id.* at 51. Mrs. Boyd testified that Appellant "looked at me and Mikey and said that I'll burn your fucking house down with your family in it." *Id.* at 68. At some point, Mr. Boyd told Appellant that there was a no trespassing sign on Mr. Boyd's property, to "please leave him and his family alone," and that he was going to call the police. *Id.* at 60, 68. Mr. and Mrs. Boyd observed that Appellant appeared to be intoxicated, had "slurred speech," and "was swaying around quite a lot." *Id.* at 61, 68. The Boyd family entered their home and called the police. *Id.* at 51-52, 68-69. Mrs. Boyd testified that once inside, Mikey was "very shook up…he was crying and upset and asked me if [Appellant] was going to kill us by burning our house down." *Id.* at 68-69. Responding police officer John Biesecker observed that Appellant was "very intoxicated. He had glassy, bloodshot eyes, and slurred speech.

He also had great trouble maintaining his balance. He was continuously swaying back and forth." *Id.* at 73. Appellant admitted to Officer Biesecker that he was "buzzed." *Id.*

On July 21, 2015, a jury convicted Appellant of Terroristic Threats and the trial court found Appellant guilty of Public Drunkenness. Trial Ct. Op., filed 12/23/15, at 3. On August 31, 2015, the trial court sentenced Appellant to a term of six to twelve months' incarceration for the Terroristic Threats conviction and ordered Appellant to pay a $150 fine for the Public Drunkenness conviction. *Id.* at 3-4.

Appellant filed a timely Post-Sentence Motion, which the trial court denied on September 14, 2015. On September 22, 2015, Appellant filed a timely Notice of Appeal. Appellant and the trial court both complied with Pa.R.A.P. 1925.

## ISSUES RAISED ON APPEAL

Appellant raises the following issues on appeal:

1. Whether the Commonwealth failed to present sufficient evidence in order to convict Appellant beyond a reasonable doubt of Terroristic Threats because Appellant's threatening statement was spur-of-the-moment as a result of transitory anger and a product of a heated exchange?

2. Whether the guilty verdict for Terroristic Threats is against the weight of the evidence because the circumstances giving rise to Apellant's threatening statement indicate it was made spur-of-the-moment as a result of transitory anger and a product of a heated exchange?

3. Whether the Commonwealth failed to present sufficient evidence in order to convict Appellant beyond a reasonable doubt of Public

Drunkenness because Appellant was not in a public place while intoxicated?

Appellant's Brief at 5.

## LEGAL ANALYSIS

Appellant first challenges the sufficiency of the evidence supporting his conviction for Terroristic Threats. This is a question of law; the standard of review is de novo and the scope of review is plenary. *See Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235 (Pa. 2007). "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Weiss*, 776 A.2d 958, 963 (Pa. 2001) (citation omitted). Further, the Pennsylvania Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Ratsamy, supra* at 1236 n. 2.

The crime of making a terroristic threat is defined by statute as follows: "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another. . . ." 18 Pa.C.S. § 2706(a)(1). To obtain a conviction for making a terroristic threat, the Commonwealth must prove the following elements beyond a reasonable doubt: (1) Appellant made a threat to commit a crime of violence; and (2) Appellant communicated the threat with the intent of terrorizing or with reckless disregard for the risk of causing terror. *Commonwealth v. Campbell*, 625 A.2d 1215, 1219 (Pa. Super. 1993).

There is little dispute that Appellant yelled a threatening statement to commit a crime of violence. The Commonwealth presented uncontroverted testimony that Appellant yelled at the Boyd family that he was going to "burn [their] fucking house down" with their child and family in it. (N.T., Trial, at 51, 68). This Court has held that a threat to destroy property by fire is a threat to commit a crime of violence under this Section. *See, e.g., Commonwealth v. Speller*, 458 A.2d 198, 201 (Pa. Super 1983). Therefore, Appellant's verbal threat to commit a crime of violence clearly satisfies the first element of Terroristic Threats. *See Campbell, supra* at 1219; *see also Speller, supra* at 201.

Appellant's argument that the Commonwealth failed to present sufficient evidence to convict him of Terroristic Threats because his

"threatening statement was spur-of-the-moment as a result of transitory anger and a product of a heated exchange" is essentially a challenge to whether Appellant had the requisite intent to terrorize the Boyd family. Appellant's Brief at 12.

To determine whether Appellant had the requisite intent, we must examine the surrounding circumstances. This Court has held that "a spur-of-the-moment threat resulting from transitory anger" after a heated exchange between two neighbors lacked the requisite intent for a Terroristic Threats conviction. *See Commonwealth v. Anneski*, 525 A.2d 373, 376 (Pa. Super. 1987) (holding defendant lacked the requisite intent when defendant threatened to get gun and use it on neighbor because surrounding circumstances indicated that statement was spur-of-the-moment threat resulting from transitory anger prompted by neighbor's threat to hit defendant's children with her car if they obstructed her vehicle's passage). However, this Court has rejected arguments that a threat resulted in "the spur-of-the-moment" when the threat involved a "planned . . . method of attack" which "indicated a settled intent to terrorize." *See In re L.A.*, 853 A.2d 388, 392 (Pa. Super. 2004) (evidence was sufficient to support adjudication of delinquency for making terroristic threats; L.A.'s threat that she would kill her caseworker by hiring a man dressed in a black outfit to wait for the caseworker behind the caseworker's silver Neon supports a

finding that L.A. had planned a method of attack and indicated a settled intent to terrorize).

In the instant case, the trial court concluded, "[Appellant's] threat circumstantially showed his settled intent to terrorize the victims when, in expressing his desire to burn the victim's house down with the family inside, he displayed that he planned a method of attack." Trial Ct. Op. at 7. We agree.

Further, while Appellant argues that his threatening statements were the result of a heated exchange between him and Mr. Boyd, the trial court concluded, "little evidence was introduced to show that [Appellant] was engaged in a heated exchange with the victims prior to making the threat." Trial Ct. Op. at 8. Mr. and Mrs. Boyd returned home, exited their vehicle, and Appellant immediately confronted the couple yelling "obscenities" at them from his porch. (N.T., Trial, at 48-49, 66-67). The trial court accurately opined:

> While Michael Boyd agreed that he and [Appellant] were "arguing face-to-face' the testimony introduced at trial showed that Michael Boyd directed very few statements toward [Appellant] during the brief encounter. Specifically, Michael Boyd told [Appellant] that there were "no trespassing" signs on his property, and he was going to call the police. Holly Boyd testified that her husband additionally told Defendant to leave his family alone. Thus, any characterization of the events of July 26, 2015, as a "heated *exchange*" seems to stretch the meaning of that phrase.

Trial Ct. Op. at 8-9 (emphasis in original, internal citations omitted).

Accordingly, in viewing the evidence in the light most favorable to the Commonwealth, we find that the trial court correctly determined that Appellant and Mr. Boyd were not engaged in a heated exchange, that Appellant did not make the threatening statement "spur-of-the-moment" as a result of "transitory anger," that Appellant had the requisite intent to terrorize, and that there was sufficient evidence to convict Appellant of Terroristic Threats.

Appellant next challenges the weight of the evidence supporting his conviction for Terroristic Threats. The standard of review is as follows:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007). Further, this Court will give the "gravest consideration to the findings and reasons advanced by the trial [court]" because the trial court had the opportunity to hear and see the evidence presented. *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000).

Here, the trial court determined that "the verdict of guilty was not against the weight of the evidence as the jury's verdict was not so contrary to the evidence as to shock one's sense of justice." Trial Ct. Op. at 9-10. The record supports the trial court's findings and we find no abuse of discretion.

Lastly, Appellant argues that there was insufficient evidence to convict Appellant beyond a reasonable doubt of Public Drunkenness because Appellant was not in a public place while intoxicated. We agree.

The Pennsylvania Crimes Code defines the crime of Public Drunkenness, in relevant part, as follows: "A person is guilty of a summary offense if he appears **in any public place** manifestly under the influence of alcohol." 18 Pa.C.S. § 5505 (emphasis added). It is not in dispute that Appellant had been drinking alcohol that night; he even admitted to Officer Biesecker that he was "buzzed." (N.T., Trial, at 73). Therefore, the only question before this court is whether Appellant was in a "public place."

Section 5505 does not define the term "public." This Court, however, has observed that the Pennsylvania Crimes Code defines the term in two other sections – namely Section 5902 dealing with Prostitution and Section 5503 dealing with Disorderly Conduct. *See Commonwealth v. Meyer*, 431 A.2d 287, 289 (Pa. Super. 1981). Section 5902 defines "public place" as "any place to which the public or any substantial group thereof has access." 18 Pa.C.S. § 5902 (f). Section 5503 defines "public" as "affecting or likely to

affect persons in a place to which the public or a substantial group has access . . . or any premises which are open to the public." 18 Pa.C.S. § 5503(c). Further, Black's Law Dictionary defines "public property" as "[s]tate – or community – owned property not restricted to any one individual's use or possession." Black's Law Dictionary (10th ed. 2014). Also, in *Meyer*, this Court found that the area directly outside of a private club was not public property:

> [It] cannot be said here that the public at large has the right to enter V.F.W. Post 118 or make use of its facilities, nor can it be said that V.F.W. Post 118 is "easy to enter" when the individual attempting entry is not a member or the guest of a member. The same applies to the area outside the Post in this case.

*Meyer*, 431 A.2d at 289.

Our review of the record, in a light most favorable to the Commonwealth, reveals insufficient evidence to establish that Appellant "appeared in a public place," and therefore insufficient evidence to establish the "public" element of Public Drunkenness. 18 Pa.C.S. § 5505. First, Appellant yelled at the Boyd family from his own porch, which is private property. (N.T., Trial, at 48, 56). Next, Appellant left the porch and got into an altercation with Mr. Boyd along the property line, remaining on his own private property. *Id.* at 59-60, 63. The Commonwealth presented conflicting testimony about where Appellant was standing when he shouted the threat. While Mr. Boyd testified that Appellant remained on Appellant's

own property, Mrs. Boyd testified that Appellant was "coming into her driveway." *Id.* at 59-64, 70.[2]

Whether Appellant remained on his own private property or began to enter Mr. and Mrs. Boyd's private property, the fact remains that he did not "appear in a public place." The Commonwealth did not present any evidence to indicate that Appellant's property or the Boyd's property was a "public place." No evidence established that either property was "state – or community – owned" or that a "substantial group" had access to the properties. *See* Black's Law Dictionary (10th ed. 2014); *see also* 18 Pa.C.S. § 5902(f); *see also* 18 Pa.C.S. § 5503(c). On the contrary, the Commonwealth presented evidence that Mr. Boyd had no trespassing signs on his property to ensure that the public did **not** have access to his private property. (N.T., Trial, at 60).

Further, the trial court erroneously relies on *Commonwealth v. Whritenour*, 751 A.2d 687 (Pa. Super. 2000), to determine that Appellant was in a public place. In *Whritenour,* this Court concluded that a road in a

---

[2] We note that we find the Appellant's behavior not only excessive and inappropriate, but also detrimental to the safety and sanctity of neighborhoods and communities. The Crimes Code, however, limits this offense only to defendants whose offensive acts occur in public. Since we are limited by the language of the Crimes Code, we must reverse the conviction. We, however, see no difference in the harm caused by drunken behavior that occurs in public or in residential areas and ask the Legislature to consider expanding the application of this offense to those acts that occur in residential areas as well.

gated community was "public" because "the road was located in a neighborhood, whatever its legal constitution, and was traversed by members of the community and their invitees or licensees." *Id.* at 688. In the instant case, the trial court relied on *Whritenour* to conclude that the incident took place on property within a residential neighborhood, and thereby determined that the property was "public." Trial Ct. Op. at 12. We disagree. *Whritenour,* where the incident took place on a private road that numerous people had access to, is not analogous to the instant case where Appellant was on his own private property and then his neighbor's private property, both of which were not open to members of the community.

The evidence, viewed in a light most favorable to the Commonwealth, reveals that Appellant was on his own private property and then his neighbors' property – neither of which qualify as "public property." The Commonwealth failed to prove that Appellant was in a **public** place while intoxicated, and therefore failed to present sufficient evidence to prove Public Drunkenness.

Judgment of sentence for Terroristic Threats affirmed; judgment of sentence for Public Drunkenness vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary
Date: 7/22/2016