J-A02023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY LEE COOKE | : | |
| | : | |
| Appellant | : | No. 811 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 24, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000204-2018

BEFORE: SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED FEBRUARY 14, 2020**

Appellant, Jerry Lee Cooke, appeals from the judgment of sentence entered on May 24, 2019 in the Criminal Division of the Court of Common Pleas of Greene County. We affirm.

On June 25, 2018, Agent Daniel Jena of the Office of the Attorney General and Patrolman Adam Fichter of the Waynesburg Borough Police Department were on a plainclothes, undercover detail in Waynesburg, Pennsylvania. Both officers were seated in an unmarked vehicle facing west on South Alley. As the officers watched a nearby intersection, a black GMC truck driven by Appellant and travelling east along South Alley pulled alongside the officers' vehicle. The windows of both vehicles were rolled down and, as the GMC truck drove passed, the officers heard the driver of the truck yell, "Move your f***ing car." N.T. Trial, 1/31/19, at 92. The truck then passed the officers' vehicle and came to a stop.

Both officers emerged from their vehicle, having determined to make contact with the driver of the truck. As Agent Jena approached the rear of the unmarked police vehicle, Appellant peered out of the truck window, deployed a handgun, activated a green laser sighting device, and shined the laser site at Patrolman Fichter and up and down Agent Jena's body. *Id.* at 40. As the laser light stopped momentarily on Agent Jena's chest, Appellant was heard to say, "Yeah, I didn't think you wanted any of that." *Id.* at 96. Both officers reported that they were startled and scared when the laser site targeted them. *Id.* at 40-41 and 97. Agent Jena then retrieved his firearm and ordered Appellant to stop. Appellant, however, disregarded this command and hastily departed the scene.

Appellant was subsequently stopped and taken into custody. A search of the center console area of his truck yielded two firearms, including the one used in the earlier incident involving Agent Jena. A breath test showed Appellant's blood alcohol level to be .18%.

On June 26, 2018, Waynesburg police filed a criminal complaint charging Appellant with aggravated assault (18 Pa.C.S.A. § 2702(a)(6)), recklessly endangering another person (18 Pa.C.S.A. § 2705), terroristic threats (18 Pa.C.S.A. § 2706), and driving under the influence of alcohol or controlled substance (DUI) (75 Pa.C.S.A § 3802(a) and (c)). At the conclusion of trial on January 31, 2019, a jury found Appellant guilty of terroristic threats and DUI (§ 3802(c) – highest rate) and acquitted him of the remaining charges. On May 22, 2019, the trial court imposed an aggregate sentence of 30 days'

incarceration, 11 months' county intermediate punishment (house arrest), and 48 months' probation. *See* Trial Court Order, 5/23/19, at 3-4 (unpaginated). Appellant filed a timely notice of appeal on May 24, 2019. After receiving extensions of time from the trial court, Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued its Rule 1925(a) opinion on August 16, 2019.

Appellant raises the following issue for our consideration.

If there [were] no evidence presented at trial that [Appellant] communicated a threat, either directly or indirectly[,] to commit a crime of violence with the intent to terrorize another, can [Appellant] be found guilty of making [] terroristic threats based upon his actions alone?

Appellant's Brief at 3.

Appellant's claim challenges the sufficiency of the evidence offered to support his conviction for the offense of terroristic threats. We apply a well settled standard of review in examining such claims.

A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Levy***, 83 A.3d 457, 461 (Pa. Super. 2013) (citation omitted).

Appellant asserts that because he spoke "no words" in a threatening manner, the evidence was insufficient to establish that he harbored an intent to terrorize another, a required element of the crime of terroristic threats. This claim lacks merit.

> A person commits the crime of terroristic threats if the person "communicates, either directly or indirectly, a threat to ... commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). "[T]he term 'communicates' means conveys in person or by written ... means." 18 Pa.C.S.A. § 2706(e). Moreover, "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." ***Commonwealth v. Fenton***, 750 A.2d 863, 865 (Pa. Super. 2000). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Id***.
>
> In ***Commonwealth v. Campbell***, 625 A.2d 1215 (Pa. Super. 1993), our Court emphasized the purpose behind the terroristic threats statute:
>
>> The purpose of [§ 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger. 18 Pa.C.S.A. § 2706, Official Comment - - 1972. The offense does not require that the accused intend to carry out the threat; it does require an intent to terrorize. The harm sought to be prevented is the psychological distress which follows from an invasion of another's sense of personal security. Therefore, it is the making of the threat with intent to terrorize that constitutes the crime.
>
> ***Campbell***, 625 A.2d at 1218-1219 (citation and quotation marks omitted).

*Commonwealth v. Kline*, 201 A.3d 1288, 1290 (Pa. Super. 2019), *appeal denied*, 216 A.3d 1038 (Pa. 2019).

Contrary to Appellant's position on appeal, this Court previously applied § 2706 to non-verbal threats conveyed in the context of person-to-person communications. In *Kline*, the defendant, on several prior occasions, stared at the victim and her children from his nearby property as they entered and exited their vehicle and home. One day, according to the victim's testimony at trial, the defendant made a hand gesture simulating the firing of a gun aimed at the victim. After a jury found him guilty of making a terroristic threat, Kline argued on appeal that the evidence was insufficient to prove he possessed the intent to terrorize because his non-verbal gesture was unaccompanied by a verbal communication of any sort. Rejecting this claim, we held that the evidence was sufficient to permit the jury to find that the defendant conveyed, with the intent to terrorize, a threat to commit a crime of violence upon the victim. *See Kline*, 201 A.3d at 1291.

In light of *Kline*, we conclude that the evidence adduced at trial was sufficient to prove that Appellant communicated, with the intent to terrorize, a threat to commit a crime of violence and, hence, that he committed the offense of terroristic threats. This is so despite the absence of a verbal threat. The evidence at trial showed that Appellant deployed a handgun, activated a green laser sighting device, and shined the laser light at Patrolman Fichter and up and down Agent Jena's body. The activation and deployment of a laser

sighting device that targeted Patrolman Fichter and Agent Jena offered the jury ample grounds upon which to conclude that Appellant threatened to fire his weapon at one or both of the officers. Moreover, prior to departing the scene, Appellant was heard to say that he didn't think Agent Jena "wanted any part of this," implying that Appellant himself understood both the nature and severity of the non-verbal threat he recently conveyed. As Appellant's non-verbal conduct clearly inflicted the type of psychological stress that follows a threatened invasion of an individual's personal security, we have little difficulty in affirming Appellant's terroristic threats conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2020