J-S66009-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MEGAN BLAIR HOOKEY, | |
| Appellant | No. 1815 WDA 2016 |

Appeal from the PCRA Order Entered November 9, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000404-2011

BEFORE: BENDER, P.J.E., DUBOW, J., and PLATT, J.*

MEMORANDUM BY BENDER, P.J.E.:                     FILED FEBRUARY 05, 2018

Appellant, Megan Blair Hookey, appeals from the post-conviction

court's order denying her first petition under the Post Conviction Relief Act

(PCRA), 42 Pa.C.S.§§ 9541-9546. After careful review, we vacate the PCRA

court's order, reverse Appellant's convictions for five counts of terroristic

threats, vacate her judgment of sentence, and remand for resentencing.

On January 30, 2012, Appellant was convicted, following a non-jury

trial, of six counts of terroristic threats, 18 Pa.C.S. § 2706(a)(1). The facts

underlying her convictions were summarized by this Court on direct appeal,

as follows:

> On August 3, 2010, [A]ppellant's mother, Bonnie Robson
> ("Robson"), received a telephone call via calling card from

_____

* Retired Senior Judge assigned to the Superior Court.

[A]ppellant who was an inmate at the Allegheny County Jail. (Notes of testimony, 1/30/12 at 12.) Robson testified that the subject of the call was an ongoing dispute concerning [A]ppellant's three-year-old son. (Id. at 12, 16.) The child was living with his father who resides with his parents and another relative. Robson testified that [A]ppellant "just blows up at me every time . . . she brings up the subject because I don't take [the child] in to see her . . . ." (Id. at 12-13.) Robson did not believe it was in the child's best interest to visit [A]ppellant in jail. (Id.)

On this particular occasion, when [A]ppellant realized she was not going to be able to see her son, she became very angry and began making threats. Specifically, [A]ppellant threatened to burn down the house where her child's father and paternal grandparents resided. Robson testified [A]ppellant stated that "[s]he would kill the little bastard, meaning [her son], because if she couldn't have him, nobody could." (Id. at 14.) Appellant also threatened to kill the child's aunt who was also living at this residence. (Id. at 14-15.)[1] When Robson pleaded with [A]ppellant to stop making such threats, [A]ppellant ignored her and responded by threatening to kill Robson too. (Id.) Robson was unaware of [A]ppellant's release date and, fearful of her safety, reported the incident. (Id. at 16.) "I was scared. It -- scared [me] enough to report it. [I was] [s]cared for our lives and the people that she threatened." (Id. at 14.)

[1] At trial, Robson testified that the voice on the audiotaped recording belonged to her daughter. (Id. at 13)

As is standard procedure in the jail, the call was recorded and a copy was subsequently given to the District Attorney's Office. Allegheny County Detective Michael Opferman testified at trial as he was assigned to jail investigations. As a part of his duties, he monitors audio recordings made of telephone calls from the Allegheny County Jail when necessary. (Id. at 20-21.) He explained that the calls made from the Allegheny County Jail are recorded on a system using PIN numbers that are unique to each inmate. Detective Opferman testified that a call dated August 3, 2010, was made using [A]ppellant's PIN number. (Id. at 19-20, 22-23.) The profanity-laden telephone recording was played for the trial court to hear. The recorded conversation also indicated that [A]ppellant was angered by the fact that her telephone calls to the Joneses were

being restricted as well as Robson's refusal to bring the child to visit her in jail.

Appellant testified on her own behalf and denied making the threatening telephone call on August 3rd; she claimed that the recording in question was fabricated by an employee in the jail. (Id. at 36, 39.) Appellant testified that she had a contentious relationship with her mother and claimed her mother had stolen her money. Appellant also stated that she had become angry with her mother during a visit to the jail in mid-July as her mother did not give her money allegedly owed to her from the sale of a camper. Appellant claimed that this was the last time she spoke to her mother until August 6, 2010.

At the close of trial, [A]ppellant was found guilty of all counts. Immediately thereafter, [A]ppellant was sentenced at the first count to time served and a five-year probationary term at the second count. No further penalty was imposed at the remaining counts.

Commonwealth v. Hookey, No. 369 WDA 2012, unpublished memorandum at 1-3 (Pa. Super. filed Nov. 7, 2013).

Appellant filed a timely direct appeal, and this Court affirmed. See Hookey, supra. She did not file a petition for allowance of appeal with our Supreme Court.

In January of 2014, Appellant violated the conditions of her probation, and a probation violation hearing was conducted on January 15, 2014. At the conclusion thereof, the court revoked Appellant's probation and sentenced her to a term of 2½ to 5 years' incarceration. Appellant thereafter filed a timely, pro se notice of appeal, and her attorney also subsequently filed an amended notice of appeal. However, on October 15, 2014, Appellant filed with this Court a pro se "Motion to Withdraw Appeal," which we granted by per curiam order on October 27, 2014.

On November 12, 2014, Appellant filed the pro se PCRA petition underlying the present appeal. Counsel was appointed, and he filed an amended petition on Appellant's behalf. Additionally, counsel filed a motion for the PCRA court to recuse from Appellant's case. On October 11, 2016, the PCRA court issued an order denying Appellant's recusal motion. That same day, the court also issued a Pa.R.Crim.P. 907 notice of its intent to dismiss her petition without a hearing, along with an accompanying opinion. Appellant did not respond to the court's Rule 907 notice, and on November 9, 2016, the court issued an order dismissing her petition.

Appellant filed a timely notice of appeal, and she also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On April 24, 2017, this Court received the PCRA court's Rule 1925(a) opinion. We now review the following issues Appellant raises on appeal, which we have reordered for ease of disposition:

I. Whether the [PCRA judge] erred in failing to recuse himself based on bias and ex parte contacts with witnesses thereby becoming a witness in the process?

II. Whether the [PCRA] court erred in not granting PCRA relief based on an invalid jury trial waiver?

III. Whether the [PCRA] court erred in not granting PCRA relief where evidence of prior bad acts was introduced and counsel was ineffective for failing to object?

IV. Whether the [PCRA] court erred in not granting PCRA relief where counsel failed to argue at trial and thereafter raise the insufficiency of evidence on appeal where no threats were communicated to the alleged victims?

> V.  Whether Appellant's sentence was illegal because all counts stemming from one phone call (one act) should have merged for sentencing purposes?
>
> VI.  Whether the [PCRA] court erred in not granting PCRA relief to correct an illegal sentence which was entered without notice and opportunity to be heard on the time credit issues?

Appellant's Brief at 1.

Our standard of review regarding an order denying post-conviction relief under the PCRA is whether the determination of the court is supported by the evidence of record and is free of legal error. Commonwealth v. Ragan, 923 A.2d 1169, 1170 (Pa. 2007). This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. Commonwealth v. Touw, 781 A.2d 1250, 1252 (Pa. Super. 2001).[1]

_____

[1] We recognize that Appellant raises issues stemming from both her original conviction and direct appeal, as well as claims that her current, post-revocation-of-probation sentence is illegal. We conclude that all of Appellant's claims are timely under the one-year timeliness requirement of the PCRA. See 42 Pa.C.S. § 9545(b). This Court has explained that:

> Probation revocation does not materially alter the underlying conviction such that the period available for collateral review must be restarted. The Legislature did, however, by its enactment of 42 Pa.C.S.[] § 9543(a)(2)(vii), intend to provide collateral review to probation revocation issues. As such, we find that probation revocation presents a special situation insofar as determining timeliness under § 9545. We hold that where a new sentence is imposed at a probation revocation hearing, the revocation hearing date must be employed when assessing finality under § 9545(b)(3) to any issues directly appealable from that hearing. To hold otherwise would frustrate the purpose behind the PCRA.

(Footnote Continued Next Page)

In Appellant's first issue, she avers that the PCRA judge (who also presided over her non-jury trial and revocation/resentencing hearing) erred by denying several motions for recusal that she filed during the litigation of her case.[2] In arguing that the court should have granted these motions, Appellant explains:

> The court below was biased and prejudiced against [] Appellant as evidenced by his comments during the proceedings. For instance, the judge called Appellant a "pathological liar" at the probation violation hearing. (N.T., 1/15/14, p. 11). Since there is no scientific basis for the [c]ourt's comment, it reflects a bias against Appellant. See Commonwealth v. Williams, 69 A.3d 735 (Pa. Super. 2013); Commonwealth v. Culver, 51 A.3d 866, 878-79 (Pa. Super. 2012). The lower court's bias influenced its decision to find that Appellant committed a probation violation (which was not based on a conviction) and led to the imposition of the maximum sentence.

(Footnote Continued) ——————————

Commonwealth v. Anderson, 788 A.2d 1019, 1021 (Pa. Super. 2001).

Here, Appellant's original judgment of sentence became final on December 7, 2013, at the expiration of the thirty-day time-period for seeking review with the Pennsylvania Supreme Court. See 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); Pa.R.A.P. 1113(a) ("a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of the entry of the order of the Superior Court sought to be reviewed"). Accordingly, she had until December 7, 2014, to file a timely PCRA petition raising issues pertaining to her original judgment of sentence, making her current petition filed on November 12, 2014 timely. Additionally, Appellant's claims challenging her post-revocation sentence imposed on January 15, 2014, are also timely under the PCRA.

[2] Appellant filed motions for the judge to recuse both before her probation revocation/resentencing hearing, and after filing her present PCRA petition.

- 6 -

Also, the lower court admittedly received ex parte communications from the Commonwealth witnesses. At the probation review hearing on March 22, 2013, the [c]ourt stated, "[w]e have gotten calls that [Appellant] is calling the people who have custody of her child." (N.T., 3/22/13, at 3). The lower court further indicated that he had spoken to the [alleged] victims personally: "Well, why would they call here and say that you are threatening them." (N.T., 3/22/13, at 5). During this hearing, the lower court indicated that he was going to believe everything the alleged victims say and "err on the side of caution," at the expense of violating Appellant's constitutional rights. The lower court stated: "What do I do in this situation? Do I believe her and make a type two error or do I make a type one error and perhaps violate some of her rights?" (N.T., 3/22/13, at 8-9).

Appellant's Brief at 8.

Appellant maintains that these comments by the court "reflect a bias against Appellant and an unalterable belief in the truth of out-of-court statements made by the alleged victims to the court." Id. She also maintains that "by having these ex parte communications with witnesses, the lower court made [itself] a witness in the proceedings" by having a "personal knowledge of disputed facts...." Id. at 9. Appellant concludes by stating that, based on the court's alleged bias, "the denial of her PCRA petition should be reversed and the case should be remanded to a different judge for a new trial, re-sentencing, or a fair disposition of her PCRA claims." Id. at 10.

Preliminarily, we conclude that Appellant has waived her contention that the court exhibited a bias against her that tainted her trial, initial sentencing proceeding, or her probation revocation/resentencing hearing in January of 2014. To be eligible for PCRA relief, the petitioner must

demonstrate "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). The PCRA further states that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S. § 9544(b). Here, Appellant did not raise, in her initial direct appeal, that the court should have recused from her trial or sentencing in January of 2012. Additionally, while she now claims that the court's bias against her impacted its impartiality at her revocation of probation/resentencing hearing in January of 2014, she withdrew her direct appeal following that proceeding, thus waiving those claims on collateral review.

Moreover, Appellant offers no discussion of how the court's remarks at the probation review hearing in March of 2013, and the probation revocation/resentencing hearing in January of 2014, demonstrate that the court was unable to preside impartially over her current PCRA claims. In any event, having carefully reviewed the record, we find no merit to such a claim. The standard for recusal is well-settled:

> It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner.... The jurist must then consider whether his or her continued involvement in the case creates an

> appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.
>
> Commonwealth v. Abu-Jamal, 553 Pa. 485, 720 A.2d 79, 89 (1998) (citations omitted). Furthermore, "[a]ny tribunal permitted to try cases and controversies must not only be unbiased but must avoid even the appearance of bias." In the Interest of McFall, 533 Pa. 24, 617 A.2d 707, 713 (1992). "There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings." Id., at 714.

Commonwealth v. White, 910 A.2d 648, 657 (Pa. 2006).

In the present case, we first conclude that the trial court's remarks at the March 22, 2013 probation review hearing do not demonstrate that the court engaged in what Appellant categorizes as 'ex parte communications.' The judge did not state that he, himself, had spoken to the individuals involved in this case. As the judge now explains in his Rule 1925(a) opinion,

> [w]hen the phrase 'the [c]ourt' is used[,] it does not mean me, [the judge,] personally did something. Contrary to [Appellant's] assertion, ... I did not personally speak to any witness. My staff was the intermediary who received the call and engaged in the conversation and then relayed the contents to me.

PCRA Court Opinion (PCO), 4/24/17, at 3 n.3. Because the record supports the court's statement of what communications occurred in this case, we reject Appellant's contention that the court had 'ex parte communications' with the victims in this case that warranted recusal.

Additionally, we disagree that the court's isolated reference to Appellant as a 'pathological liar' required the court's recusal. As the judge

explains in his opinion, his use of this phrase did not equate with a mental health diagnosis:

> The phrase ['pathological liar'] stems from a probation violation proceeding on January 15, 2014. After hearing from [three] government endorsed witnesses, the [c]ourt solicited the views of the probation agent and [Appellant's] lawyer as to punishment. The agent suggested her probation be revoked and a new sentence of jail be imposed. [Appellant's] lawyer highlighted her current mental health issues. The [c]ourt then asked defense counsel about "her being a pathological liar who's been resistant to every effort anyone's made to help her?" The [c]ourt's use of the phrase – on one occasion – was not the adoption of a medical backed conclusion [that] was presented through evidence. The [c]ourt's use was more akin to lay opinion based upon the [c]ourt's numerous interactions with [Appellant] and learning all the nuances of the case and, most importantly, the person. That long running interaction with [Appellant] is a major distinction with her reference to Commonwealth v. Williams, 69 A.3d 735 (Pa. Super. 2012). The [c]ourt has gotten to know [Appellant] quite well and simply does not hold her ability to tell the truth in high regard. That belief does not equate with a demonstration of bias which would require recusal.

PCO at 4. We ascertain no abuse of discretion in the court's decision. While the judge's use of the term 'pathological liar' may have been rash, his explanation for using that phrase demonstrates that he was not rendering a mental health diagnosis.

Moreover, we agree with the court that the circumstances in Williams are easily distinguishable from the present case. There, we rejected the appellant's argument that the judge erred by not recusing himself, where the comments by the judge on which the appellant relied were made after the trial court had denied her recusal motion. Williams, 69 A.3d at 749. In

any event, we did find that the court's remarks at sentencing indicated a "strong appearance of bias and partiality" such that the appellant's sentence must be vacated. Id. Namely, the trial court in Williams had "insisted on repeatedly describing [the] [a]ppellant as a 'pathological liar[,]'" and it had also referred to the appellant as a "classic sociopath" in its subsequent opinion. Id. at 748. While we concluded that these remarks signaled a bias against the appellant, we stressed that it was an "accumulation of inappropriate remarks" by the court that demonstrated an appearance of bias. Id. at 744. For instance, the court had commented that a prior judge involved in the case "had been unduly lenient with [the] [a]ppellant," id. at 745, it had placed "repeated emphasis on the fact that the victims of [the] [a]ppellant's crimes were agencies of the Catholic Church," id., and it had made other remarks suggesting "the appearance of bias against [the] [a]ppellant based on her gender," id. at 748. Again, it was the totality of these remarks by the court in Williams, in addition to its repeatedly referring to the appellant as a 'pathological liar,' that demonstrated the court was biased and impartial. Thus, the court's one, isolated reference to Appellant as a 'pathological liar' in the present case is obviously distinguishable from the circumstances in Williams. Therefore, we ascertain no abuse of discretion in the court's denial of Appellant's motion to recuse from the PCRA proceedings.

In Appellant's second issue, she claims that her trial counsel, Elana Kornblit, Esq., acted ineffectively by coercing her to waive her right to a jury

trial. Where, as here, a petitioner claims that she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [Commonwealth v.] Colavita, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing Strickland[ v. Washington, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the Strickland performance and prejudice test into a three-part inquiry. See [Commonwealth v.] Pierce, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. Commonwealth v. Ali, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." Commonwealth v. Simpson, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. See Ali, supra. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Colavita, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Commonwealth v. King, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable

probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" Ali, 608 Pa. at 86–87, 10 A.3d at 291 (quoting Commonwealth v. Collins, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052)).

Commonwealth v. Spotz, 84 A.3d 294, 311-12 (Pa. 2014).

According to Appellant, Attorney Kornblit acted ineffectively by "insist[ing] that if Appellant asserted her right to a jury trial and was found guilty, she would get 2½ to 5 years … of incarceration on each count to run consecutively. Hence, counsel's statements that Appellant would receive the maximum sentence under the law if she exercised her right to a jury trial, coerced her to waive her right to a jury trial." Appellant's Brief at 10.

The record of Appellant's waiver colloquy belies her claim of coercion. Notably, Appellant confirmed during the colloquy that no one promised her anything, threatened her, or coerced her to waive her right to a jury trial. N.T. Trial, 1/30/12, at 5. Appellant also stated that she understood the difference between a non-jury and a jury trial, she had consulted with her counsel about her decision, she had no questions for the court, and she was knowingly, voluntarily, and intelligently deciding to waive her right to a jury trial. Id. at 5-6.

Additionally, Appellant completed a written waiver colloquy. Id. at 6. When questioning Appellant about that form, the court commented on the fact that she left blank the question of whether she was "completely satisfied with the legal representation or advice of [her] attorney[.]" Id. In explaining why she did not complete that portion of the form, Appellant

made no mention of her current claim that counsel coerced her by threatening that she would receive the maximum sentence if she proceeded to a jury trial. Instead, Appellant complained about counsel's purported lack of communication and preparation for her trial, stating:

> [Appellant]: I didn't fill that in. I just wanted to have it placed on the record, like, these charges are from, like 18 months ago, and I never spoke to a Public Defender or met with anybody until about two weeks ago [when] Ms. Kornblit started showing up.
>
> So had I been able to meet with somebody, speak to somebody assigned to my case, there were definite issues at hand for this trial. Things could have been dismissed, things could have been suppressed. They [sic] were major issues. And I didn't have the opportunity. Now she's saying that's too late to do.

Id. at 7.

Because Appellant never provided any indication, during her written or oral colloquies, that Attorney Kornblit had guaranteed her that she would receive a maximum sentence if she was tried by a jury, the record supports the PCRA court's decision to reject her claim that counsel ineffectively coerced her into waiving her right to a jury trial. Additionally, while Appellant cursorily claims that Attorney Kornblit's "lack of preparation, and [] Appellant's timely objection to the [c]ourt, rendered [her] waiver of [her right to a] jury trial invalid[,]" she does not offer any developed discussion of this assertion. Appellant's Brief at 10. Thus, she has failed to prove that counsel acted ineffectively, or that that alleged ineffectiveness resulted in an invalid waiver of her right to a jury trial.

In Appellant's next claim, she argues that Attorney Kornblit was ineffective for failing to object to the admission of "prejudicial evidence from Bonnie Robson concerning prior bad acts of Appellant...." Appellant's Brief at 12. Specifically, Appellant maintains that counsel should have objected to Robson's testimony that Appellant "just blows up at [Robson] every time" the two discuss Robson's bringing Appellant's son to visit Appellant in jail. N.T. Trial at 12-13. According to Appellant, "there was no need for the Commonwealth to elicit this testimony in pursuit of its conviction[,]" and "the evidence made Appellant look guilty because of her mother's blanket accusation." Appellant's Brief at 13.

Appellant's brief argument is insufficient to convince us that she was prejudiced by Attorney Kornblit's failure to object to Robson's vague and isolated remark. From our review of the record, Appellant herself testified that she had a strained and volatile relationship with her mother prior to the at-issue telephone call wherein Appellant threatened Robson. For instance, Appellant testified that she and Robson had "a terrible relationship[,]" N.T. Trial at 30; one visit between she and Robson "blew up[,]" with Appellant's angrily "cussing" at Robson, and telling Robson she "was going to put her ass in jail[,]" id. at 31; Appellant has "been fighting" for her son and Robson is "the ringleader" in that custody battle, id. at 33; Robson has "hated" Appellant "from the time [Appellant] was little[,]" id. at 34; and Appellant and Robson have a bad relationship, and Appellant has had "angry outbursts" at Robson because she is "very hurt" by Robson, id. at 34, 35.

Given Appellant's testimony - which painted a picture of an explosive relationship between Appellant and Robson that included angry outbursts by Appellant toward Robson - we cannot conclude that the trial court's verdict was impacted by Robson's cumulative testimony that Appellant 'blows up' at Robson every time they speak about Appellant's son.  Therefore, Appellant has failed to demonstrate that Attorney Kornblit was ineffective for not objecting to Robson's remark in this regard.

In Appellant's fourth issue for our review, she asserts that Attorney Kornblit, and Appellant's direct appeal counsel, were ineffective for failing to challenge the sufficiency of the evidence to sustain five of her six convictions for terroristic threats.[3]  Specifically, Appellant claims that trial and appellate counsel should have asserted that the evidence was insufficient to prove that Appellant's "threats were communicated, even indirectly, to five of the purported victims, including the minor child."  Appellant's Brief at 11.

By way of background, direct appeal counsel did raise a sufficiency challenge, but counsel only argued that the evidence failed to demonstrate Appellant's "actual intent to terrorize or reckless disregard for causing terror…[.]"  Hookey, No. 369 WDA 2012, unpublished memorandum at 4.

_____

[3] It is unclear if Attorney Kornblit represented Appellant both at trial and on direct appeal.  We will presume that Appellant had a different attorney on appeal.

This Court found that sufficiency claim meritless, but in a concurring statement, The Honorable Gene Strassburger declared:

> There is a question of whether Appellant's threats were communicated, even indirectly, to five of the purported victims, including the minor child. However, neither party has raised this issue. Accordingly, I join the Majority Memorandum.

Hookey, No. 369 WDA 2012, concurring statement by J., Strassburger.

Appellant now relies on Judge Strassburger's concurring statement as evidence that her appellate counsel acted ineffectively by not arguing that Appellant's threats were not communicated to five of the six victims. In response, the Commonwealth asserts that such a claim would not have been meritorious, despite Judge Strassburger's suggestion otherwise. The Commonwealth relies on two cases, Commonwealth v. Kelley, 664 A.2d 123 (Pa. Super. 1995), and Commonwealth v. Campbell, 625 A.2d 1215 (Pa. Super. 1993). In Kelley, the defendant called a law firm and told the secretary who answered the phone that he was going to kill a certain attorney at the firm, as well as a specific judge. Kelley, 664 A.2d at 125. The secretary then conveyed those threats to both victims. Id. at 127. In Campbell, the defendant told a cashier at a store to "give a message" to another cashier, and then made a threatening gesture and remark. Campbell, 625 A.2d at 1218. The cashier who was the target of the threat was ultimately told of it, and she "appeared to be frightened." Id.

In both Kelley and Campbell, the threat made by the defendant was actually conveyed to the victim(s). To the contrary, here, there was no

evidence presented that Appellant's threats were ever communicated to any victim but her mother, Robson. The Crimes Code provides, in relevant part, that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a) (emphasis added). Thus,

[f]or a defendant to be convicted of terroristic threats,

the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

Commonwealth v. Beasley, 138 A.3d 39, 46 (Pa. Super. 2016) (emphasis added) (quoting Commonwealth v. Reynolds, 835 A.2d 720, 730 (Pa. Super. 2003) (internal quotations and citations omitted)).

We recognize that "[t]erroristic threats do not have to be communicated directly." Beasley, 138 A.3d at 47 (citing Kelley, 664 A.2d at 127). However, this Court has also declared that, "based on the statute's plain meaning, our strict construction of it, and the legislature's stated purpose in enacting it, we conclude that the term, 'communicates,' as used in the terroristic threats statute, contemplates that the threat be received."

Id. (quoting Commonwealth v. Vergilio, 103 A.3d 831, 833-34 (Pa. Super. 2014), appeal denied, 114 A.3d 416 (Pa. 2015)).

In the present case, unlike in Kelley and Campbell, there was no evidence that Appellant's threats were communicated – either directly or indirectly - to any victim but Robson. Thus, we agree with Appellant that the evidence was insufficient to sustain her convictions for terroristic threats regarding the five victims other than Robson. Appellant's trial and appellate attorneys were ineffective for failing to present this claim before the trial court, or to this Court on direct appeal. Consequently, we reverse Appellant's convictions for terroristic threats pertaining to Aaron Jones, Paul Jones, Mary Jones, Ericka Jones, and P.H.[4] Appellant's conviction of terroristic threats pertaining to Robson remains in place. Because it is not clear from the record for which victim Appellant's current sentence of incarceration was imposed, we vacate her judgment of sentence and remand for resentencing.[5]

Order vacated. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Dubow files a concurring statement.

_____

[4] We use the minor victim's initials for confidentiality purposes.

[5] Because of our decision to vacate Appellant's judgment of sentence, we need not address her remaining two claims challenging the legality of her current sentence.

- 19 -

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/5/2018